UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                              |   |                              |
|------------------------------|---|------------------------------|
| UNITED STATES OF AMERICA,    | ) |                              |
|             Plaintiff,       | ) |                              |
|                              | ) | Criminal No. 13-10110-PBS    |
|             v.               | ) |                              |
|                              | ) |                              |
| KENNETH WHIGHAM,             | ) |                              |
|             Defendant.       | ) |                              |

## MEMORANDUM AND ORDER

April 2, 2014

Saris, U.S.D.J.

Defendant Kenneth Whigham has moved to suppress all evidence obtained as a result of an automobile stop and search by state police on February 28, 2013. He contends that the evidence was seized in violation of his Fourth Amendment rights because the officers lacked a reasonable belief that he possessed a weapon or otherwise presented a danger to them. At an evidentiary hearing on March 21, 2014, state troopers Carlos Rivera and Michael O'Neil testified for the government. The defendant's sister testified on his behalf. After hearing, Defendant's Motion to Suppress (Docket No. 42) is **DENIED**.

## FINDINGS OF FACT

On February 28, 2013, Massachusetts state troopers Carlos Rivera and Michael O'Neil were working a traffic detail inside

1

the O'Neill Tunnel on the I-93 northbound side. The two left-most lanes were closed for the construction crew, marked off with orange cones and arrow boards. Trooper Rivera stationed his unmarked car at the entrance to the tunnel, in the same lane as the work crew. The front of Rivera's car faced the work crew, with lights flashing to alert passing drivers to the closed lanes. Trooper O'Neil was stationed approximately a quarter of a mile inside the tunnel, north of Rivera's car.

At approximately 11:45 P.M., Rivera saw headlights in his rearview mirror. The vehicle appeared to weave in and out of the closed lane behind Rivera's car. The vehicle, a black Ford Explorer, then passed Rivera at a normal speed in the travel lane. Once ahead of Rivera's car, the Explorer again swerved into the work lane, hitting the traffic cones. Concerned that the car had swerved a second time, Rivera activated his lights and sirens and pulled up behind the Explorer. Rivera directed the motorist to stop his car and pull into the closed-off left lanes, in order to free the two travel lanes for traffic. O'Neil observed Rivera follow the Explorer and pulled in behind Rivera's cruiser, assisting Rivera by directing traffic to stop so that the Explorer could pull over to the left lanes. Rivera radioed in the traffic stop, stating that the operator had swerved in and out of traffic and knocked over multiple cones. The government presented an audio recording of Rivera's call at the motion hearing.

Both troopers parked a few car lengths behind the Explorer and exited their vehicles. They spoke briefly as they approached the Explorer from behind; Rivera explained to O'Neil that he had observed the car swerve into the construction zone. Rivera walked up to the Explorer on the driver's side while O'Neil approached on the passenger side.

When O'Neil arrived at the closed passenger side window, he saw the defendant hunched over the center console to the right, with his right hand extended toward the underside of the passenger seat. O'Neil became concerned that the defendant was either reaching for or attempting to conceal a weapon. O'Neil grabbed the passenger door handle and attempted to open the door. Since it was locked, O'Neil began banging on the window, shouting, and gesticulating for Rivera to unlock the car from the driver's side door.

As he approached the car on the driver's side, Rivera saw the driver bent over at the waist toward the right. By the time Rivera arrived at the open driver's side window, the operator, later identified as defendant Kenneth Whigham, was sitting upright with his hands in his lap. Rivera noticed the defendant's bloodshot and droopy eyes and smelled the odor of alcohol. Rivera asked the defendant to show his license and registration.

Within seconds, Rivera noticed O'Neil banging on the windshield and heard him yelling to open the door. Rivera reached

3

into the car and hit the unlock button. O'Neil opened the passenger door, leaned into the car toward the passenger seat floor where he had seen the defendant's hand, and saw a small pink-handled pistol just underneath the passenger seat. O'Neil could not see the gun in plain view when he was outside the car. O'Neil yelled that he saw a gun, and Rivera opened the driver's side door, grabbed the defendant's left arm and shirt, and began pulling him out of the car. Simultaneously, O'Neil entered the car and pushed the defendant out through the driver's side door. Video surveillance footage taken from inside the tunnel corroborates the officers' testimony.

Once they pulled the defendant out of the Explorer, the troopers handcuffed him and asked him whether he could produce a license to carry a firearm. The defendant answered in the negative, and the troopers advised him that he was under arrest and provided him with <u>Miranda</u> warnings. The troopers executed a custodial search of the defendant and found approximately $600 in cash and several small baggies containing what appeared to be crack cocaine.

Rivera communicated the arrest via radio to other troopers stationed in the tunnel and asked for assistance, advising that he and O'Neil had found a firearm. Within a few minutes, other troopers arrived to assist Rivera and O'Neil. Further search of the car revealed a knife and a GPS monitoring device meant to be

4

worn on the ankle. Officer Rivera learned during booking that the defendant had a suspended driver's license. The defendant was issued citations for operating under the influence of alcohol (second offense), Mass. Gen. Laws ch. 90, § 24K; operating a motor vehicle with a suspended license (subsequent offense), Mass. Gen. Laws ch. 90, § 23E; and a marked lanes violation, Mass. Gen. Laws ch. 89, § 4A.

The defendant called his sister Keitha Stephens after he was pulled over. The defendant had left a gathering at Stephens's house roughly fifteen minutes before the troopers stopped him in the tunnel. Defendant had been drinking at the party. Stephens drove to the tunnel and saw the defendant's car. She approached a trooper (neither O'Neil nor Rivera) and offered to drive the defendant's car home, but the trooper denied her request. Instead, the Explorer was towed from the tunnel.

### CONCLUSIONS OF LAW

*1. Traffic Stop*

Law enforcement officers may lawfully stop a vehicle when there is probable cause to believe a traffic violation occurred. E.g., <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996). Rivera observed the defendant twice swerve into a cordoned-off construction area which was marked by lights, cones, and signage, and observed the defendant hit the cones. As defendant conceded at hearing, Rivera had probable cause to find that defendant's

driving violated the traffic laws. See Mass. Gen. Laws ch. 89, § 4A (prohibiting a motor vehicle driver from moving out of his lane in an unsafe manner). I find that Rivera lawfully stopped the defendant's car.

*2. Frisk of the Car*

Vehicle searches are "permissible where officers 'possess[] a reasonable belief based on specific and articulable facts . . . which reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of . . . weapons' in the vehicle." United States v. Ivery, 427 F.3d 69, 72 (1st Cir. 2005) (quoting Michigan v. Long, 463 U.S. 1032, 1049 (1983) (internal quotation omitted)); see also Terry v. Ohio, 392 U.S. 1, 27 (1968) (holding frisk for weapons is reasonable where a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger"). If the officer possesses an articulable, reasonable concern for officer safety, he or she may search the car's interior for weapons that the suspect could quickly lay his hands on. United States v. McGregor, 650 F.3d 813, 820 (1st Cir. 2011).

Trooper O'Neil testified credibly that the defendant's posture made him concerned for his safety because he reasonably suspected the defendant might be reaching for or concealing a weapon. His reactions are recorded on the surveillance tape. He

begins gesticulating in an alarmed manner immediately after he shines a flashlight into the car and looks through the passenger window. Once the car is unlocked, O'Neil does not root around the car's interior at length, but instead dives straight for the passenger side floor. O'Neil's actions and comportment, as viewed by the Court from the surveillance tape, are consistent with a genuine concern for officer safety.

The defendant contends that a slumped posture cannot constitute reasonable belief that a driver may have a weapon, relying on United States v. McKoy, 428 F.3d 38 (1st Cir. 2005). In McKoy, the First Circuit held that it was not reasonable to infer that a driver is armed when he exhibits a nervous demeanor and reaches towards the car's center console, a movement consistent with retrieving one's license and registration. Id. at 41. McKoy is distinguishable in that the driver was parked on the street in the middle of the afternoon, not driving erratically at night. The First Circuit concluded that there is "nothing sinister or menacing" about reaching for the center console. Id. at 40. Here, at 11:45 p.m., O'Neil observed the defendant, who had been driving erratically, hunched over, with his hand partly under the passenger seat, a posture not consistent with retrieving a license or registration.

Because I find that Trooper O'Neil possessed a reasonable concern for officer safety, the search of the passenger side

7

floor is valid and reasonable under the Fourth Amendment. Consequently, I will not reach the parties' arguments regarding inevitable discovery under either search incident to arrest or inventory search.

**ORDER**

Defendant's Motion to Suppress (Docket No. 42) is **DENIED**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge